UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER WILKES, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| v. | ) Case No. 4:21-cv-01148-SRC |
| | ) |
| ANTONY BLINKEN, et al., | ) |
| | ) |
| Defendant(s). | ) |

**<u>Memorandum and Order</u>**

Desirous of marriage to his Filipina fiancée, Christopher Wilkes petitioned the government for a visa that would allow her to journey to the United States. Since then, years have passed, and still no visa. So now Wilkes sues for a court order forcing the government to act on his request. All Defendants move to dismiss—some say the Court has no jurisdiction over them and others contend Wilkes fails to state a claim. Some of these arguments have merit, but not others, and so the Court in part grants and denies the Defendants' motion.

**I.     Background**

Unless otherwise noted, the parties agree on the following. Thus, the Court considers these facts while evaluating the Defendants' motion to dismiss and Wilkes's motion for summary judgment.

This case centers on Wilkes's K-1 visa petition for his fiancée. According to the Department of State, *see Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 793 (8th Cir. 2016) (noting that the Court may take judicial notice of government websites), a K-1 visa permits a foreign-citizen fiancé(e) to travel to the United States and marry his or her United-States-citizen sponsor within 90 days of arrival. U.S. Dep't of State, *Nonimmigrant Visa for a*

*Fianc(é)e (K-1)*, TRAVEL.STATE.GOV (last accessed April 29, 2022), https://travel.state.gov/content/travel/en/us-visas/immigrate/family-immigration/nonimmigrant-visa-for-a-fiance-k-1.html#4.  After the wedding, the foreign citizen can then apply for permanent-resident status.  *Id.*  To start the process, the United-States-citizen sponsor files a petition with United States Citizenship and Immigration Services, and after Citizenship and Immigration Services approves the petition, the petition goes to the Department of State's National Visa Center.  *Id.*  The National Visa Center then sends the petition to the appropriate embassy for a consular officer to conduct a visa interview.  *Id.*

In July 2019, Wilkes filed a K-1 visa petition for his fiancée, Arlyn Siaton Velonta, with Citizenship and Immigration Services so that she could come to the United States as a permanent resident.  Doc. 1 at ¶¶ 11–13.  Citizenship and Immigration Services approved the petition in September 2020.  *Id.* at ¶ 12.  Now in the Department of State's National Visa Center, the visa petition remains unadjudicated, and the Defendants have not provided any reason for the delay other than a message referencing "Covid-19 concerns."  *Id.* at ¶¶ 14–15; Doc. 9-1 at ¶¶ 5–6; Doc. 12 at ¶¶ 5–6.  So, in September 2021, Wilkes filed this lawsuit against Antony Blinken, Secretary of State; Merrick Garland, the Attorney General; Alejandro Mayorkas, Secretary of Homeland Security; Ur Mendoza Jaddou, Director of United States Citizenship and Immigration Services; Christopher Wray, Director of the Federal Bureau of Investigation; Richard Visek, Department of State's Acting Legal Advisor; Rena Bitter, Assistant Secretary of State for Consular Affairs; and Heather Variava, Chargé d'affaires at the U.S. Embassy to the Philippines.  *Id.* at ¶¶ 5–10.

The lawsuit alleges that the Defendants have unreasonably delayed adjudication of his fiancée's visa and brings claims under the Administrative Procedure Act, 5 U.S.C. § 706(1), and

the Mandamus Act, 28 U.S.C. § 1361. Doc. 1 at ¶¶ 11–33. The Defendants filed a motion to dismiss both for lack of jurisdiction and failure to state a claim. Doc. 4. Wilkes responded, and filed a motion for summary judgment, arguing that the undisputed materials facts entitle him to judgment as a matter of law. Doc. 8, 9. The parties have fully briefed the motions. Docs. 4, 5, 8, 9, 10, 11, 12, 15.

## II. Standards

### A. Rule 12(b)(1) standard

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss a claim for lack of subject-matter jurisdiction. To invoke federal jurisdiction, a plaintiff must demonstrate the existence of an actual and concrete dispute. *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018). If at any point before or during the proceedings the case becomes moot, the Court's jurisdiction dissipates. *Id.* The Eighth Circuit has held that "[i]n deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleadings." *Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018). To survive a motion to dismiss for lack of subject-matter jurisdiction, the party asserting jurisdiction has the burden of establishing that subject-matter jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

### B. Rule 12(b)(6) standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the plaintiff to give "a short and plain statement showing that the pleader is entitled to relief . . . ." To meet this

standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).  This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  The Court must grant all reasonable inferences in favor of the nonmoving party.  *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).  Ordinarily, only the facts alleged in the complaint are considered for purposes of a motion to dismiss; however, materials attached to the complaint may also be considered in construing its sufficiency.  *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff . . . ."  *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).  However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted.  *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).  Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice.  *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation.  *Twombly*, 550 U.S. at 555 (citation omitted); *Iqbal*, 556 U.S. at 677–78.

### C. Summary judgment standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(a).

### III. Discussion

In one, omnibus motion, Secretary of Homeland Security Mayorkas, Director of United States Citizenship and Immigration Services Jaddou, Attorney General Garland, and FBI Director Wray move to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, and the remaining State-Department Defendants move to dismiss under Rule 12(b)(6) for failure to state a claim. Wilkes also moves for summary judgment. The Court first addresses the motion to dismiss for lack of subject-matter jurisdiction, then considers the motion to dismiss for failure to state a claim and concludes with consideration of Wilkes's motion for summary judgment.

**A.     Motion to dismiss for lack of subject-matter jurisdiction**

**1.     Defendants Mayorkas and Jaddou**

Mayorkas and Jaddou, in what they call a "factual attack" on the Court's subject-matter jurisdiction, say that the Department of Homeland Security and Citizenship and Immigration Services have completed all the steps in the visa-adjudication process in this case for which they are responsible; thus, no live controversy exists between them and Wilkes and the claims against them are moot. Doc. 5 at pp. 7–8. The Court notes that in their "factual attack" Mayorkas and Jaddou cite only Wilkes's allegations along with at-this-stage judicially noticeable facts, so the
Case: 4:21-cv-01148-SRC   Doc. #: 16   Filed: 04/29/22   Page: 5 of 16 PageID #: 138

Court views their motion to dismiss as a facial, not factual, attack on the Court's subject-matter jurisdiction. *Croyle*, 908 F.3d at 380 ("In deciding a motion under Rule 12(b)(1), *the district court* must distinguish between a facial . . . and a factual attack." (emphasis added)); *see also id.* at 380–81 ("This court is bound by the district court's characterization of the Rule 12(b)(1) motion." (citing *Carlson v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016)).

As mentioned, mootness occurs when no "actual and concreate" dispute exists, such that resolution of a claim will have no direct consequences for the parties involved. *Sanchez-Gomez*, 138 S. Ct. at 1537. According to the complaint, Wilkes filed a visa petition on behalf of his fiancée in July 2019, and Citizenship and Immigration Services approved the petition in September 2020. Doc. 1 at ¶ 12. The parties agree that the next step in the visa-adjudication process is a visa interview. Doc. 5 at p. 3; Doc. 8 at p. 6. Of course, no interview has occurred—the crux of this unreasonable-delay dispute. But regardless of the State Department's allegedly unreasonable delay in scheduling a visa interview, Wilkes has pleaded no facts alleging that Defendants Mayorkas or Jaddou have responsibility for that delay. Doc. 1 at ¶¶ 12, 24.

Wilkes argues against dismissal of Mayorkas and Jaddou, despite the "status of the visa at the NVC," because "[i]t is the practice of these agencies to share security information with other agencies," and "these Government Defendants work together and frequently transfer cases back and forth." Doc. 8 at p. 10. But Wilkes fails to address Mayorkas and Jaddou's argument—and Wilkes's admission—that "USCIS approved this visa petition" long ago. Doc. 1 at ¶ 12. Moreover, despite Wilkes's argument that the Defendants transfer cases back and forth, Wilkes pleads no facts in his complaint to suggest that Mayorkas and Jaddou will again consider his petition. Here, Wilkes himself alleges that "[he] properly filed with USCIS a visa petition for his fiancée," and that "USCIS approved this visa petition." *Id.*; *see Niaz v. Chertoff*, No. C-7-

6

4030, 2007 WL 4246018, at *1 (N.D. Cal. Nov. 29, 2007) (holding claim against Citizenship and Immigration Services moot after "USCIS received the petition . . . approved the petition . . . , and forwarded the approved petition to the NVC."). As the complaint itself establishes that Mayorkas and Jaddou have completed their role in the adjudication of Wilkes's petition, Wilkes's claims against them are "now moot," *Niaz*, 2007 WL 4246018, at *1, and the Court grants their motion to dismiss for lack of subject-matter jurisdiction.

### 2. Defendants Garland and Wray

Attorney General Garland and FBI Director Wray move to dismiss for lack of subject-matter jurisdiction arguing they have no role in the visa-adjudication process. Doc. 5 at p. 9. Under both the Administrative Procedure Act and the Mandamus Act, Wilkes must allege that Garland and Wray owe Wilkes a duty to act. *See* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a *duty owed to the plaintiff*." (emphasis added)); *Ctr. for Biological Diversity v. EPA*, 794 F. Supp. 2d 151, 156 (D.D.C. 2011) ("Because 'a delay cannot be unreasonable with respect to action that is not required,' an unreasonable-delay claim requires that the agency has a duty to act in the first place." (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 n.1 (2004)); *see also Alvarez v. Raufer*, No. 19-3155, 2020 WL 1233565, at *2 (E.D. Pa. Mar. 12, 2020) ("Courts tend to treat as jurisdictional the issue of whether Defendants have a nondiscretionary duty that is subject to claims of unreasonable delay.").

Here, Wilkes justifies suing Garland and Wray with the terse statements that the Department of Justice "ensur[es] compliance with all applicable federal laws," and that Wilkes "suspects" that the FBI could be delaying a needed security check. Doc. 1 at ¶¶ 7, 8. However,

7

Wilkes does not allege, nor can he, that either the FBI or the Attorney General has "a duty to assist with the issuance of [ ] visa petitions." *El-Arbi v. Poulos*, No. CV 07-6646, 2008 WL 11342690, at *3 (C.D. Cal. Apr. 3, 2008). Because Wilkes has not pleaded the existence of a duty to act owed to him by either Garland or Wray, the Court grants their motion to dismiss.

      **B.**      **Motion to dismiss for failure to state a claim**

Having dismissed Defendants Mayorkas, Jaddou, Garland, and Wray, the Court now considers—and rejects—the remaining Defendants' argument that Wilkes fails to state an unreasonable-delay claim under the Administrative Procedure Act and the Mandamus Act.

Under the Administrative Procedure Act, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof," 5 U.S.C. § 702, and "[t]he reviewing court shall— (1) compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706. Thus, the Act provides "limited authority . . . to review whether agency action has been 'unlawfully withheld or unreasonably delayed' . . . ." *Org. for Competitive Markets v. U.S. Dep't of Agric.*, 912 F.3d 455, 461–62 (8th Cir. 2018) (quoting 5 U.S.C. § 706). Though "an agency's mere failure to act is usually not a final agency action triggering judicial review," *id.* at 462, "a claim under § 706(1) should be reviewed as a petition for a writ of mandamus," *id.* (citing *Telecomms. Research & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1984)).

Similarly, under the Mandamus Act, federal courts may issue writs of mandamus to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "The standard for undue delay under the Mandamus Act . . . is identical to the APA standard." *Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142

8

(D.D.C. 2020) (citing *Norton*, 542 U.S. at 63–64); *see Mohammad v. Blinken*, 548 F. Supp. 3d 159, 164–65 (D.D.C. 2021) (quoting *Kangarloo*, 480 F. Supp. 3d at 142).

The parties agree that the Court applies the six-factor *TRAC* test to evaluate whether Wilkes states a plausible claim that Defendants have unreasonably delayed adjudication of Wilkes's visa petition.  Doc. 5 at p. 10; Doc. 8 at p. 11.  *TRAC* requires the Court to consider:

> (1) the time agencies take to make decisions must be governed by a "rule of reason";
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

750 F.2d 70, 80 (D.C. Cir. 1984); *Irshad v. Johnson*, 754 F.3d 604, 607–08 (8th Cir. 2014) (applying the *TRAC* factors); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (applying the *TRAC* factors to an unreasonable-delay claim under § 706(1)).  These factors provide guidance, but "[e]ach case must be analyzed according to its own unique circumstances." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (quoting *Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984)).

Because the *TRAC* factors originated in the unique context of a petition for review in the court of appeals, *see* Fed. R. App. P. 15, some debate exists regarding whether a district court properly considers the *TRAC* factors at the motion-to-dismiss stage, *compare Thomas v. Pompeo*,

9

438 F. Supp. 3d 35, 44 (D.D.C. 2020) (noting that application of the *TRAC* factors requires a "fact intensive inquiry" and declining to evaluate them at the motion-to-dismiss stage) *with Ghadami v. U.S. Dep't of Homeland Security*, No. 19-397, 2020 WL 1308376, at *7 n.6 (D.D.C. March 19, 2020) ("In applying these factors, the Court is not determining whether there has been an unreasonable delay; rather, it is determining whether plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable delay."), but here the parties assume that it may, Doc. 5 at pp. 9–15; Doc. 8 at 12–19.

### 1. *TRAC* factors 1 and 2

"The first and most important factor is that 'the time agencies take to make decisions must be governed by a rule of reason.'" *In re Core Communs., Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 80). The second *TRAC* factor requires consideration of any congressionally indicated timetables for the agency's decision. While "'no congressional imposed timeline for processing' fiancé[e] visa applications" exists, *Brzezinski v. U.S. Dep't of Homeland Security*, No. 21-376, 2021 WL 4191958, at *5 (D.D.C. Sept. 15, 2021) (quoting *Mohammad*, 548 F. Supp. 3d at 164), the Court cannot determine whether a "rule of reason" governs the Defendants' decision making "in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful. . . ." *Mashpee*, 336 F.3d at 1102. That determination turns in large part on "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Id.* As Defendants put it, "the question is whether 'officials [are] just twiddling their thumbs.'" Doc. 5 at p. 11 (citing *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 225 (E.D.N.Y. 2021)).

The Defendants argue that the alleged one-year (now twenty-month) delay in interview scheduling, in view of the coronavirus pandemic and other consular demands like the high-

10

priority visa applications of certain Afghan and Iraqi nationals, is reasonable as a matter of law. Doc. 5 at pp. 11–12.  The Defendants cite several district court cases finding delays of two to five years reasonable, but do not propound evidence regarding whether a rule of reason has governed the decision-making in this case.  *Id.*

The Defendants urge the Court to take judicial notice of several U.S. Government websites, Doc. 5 at p. 2 n.3, including the "Contact Us" page of the embassy's website, *id.* at p. 4 n.9.  Counsel for the Defendants indicated that he last accessed the page on November 23, 2021, and the Court has no way of determining what the website said on that date, but as of March 28, 2022, the website stated that:  "The Embassy is processing immigrant visas across all categories.  However, with significant backlogs in most categories, wait times for interviews are lengthy . . . Most K visa cases being scheduled [for interview] were documentarily complete in July 2021."  U.S. Embassy in the Philippines, *Contact Us, Visa Operations Update* (as visited March 28, 2022, and available in the Court's case file), https://ph.usembassy.gov/visas/contactus/.

This statement raises several questions which the briefing does not address.  What is a "documentarily complete" visa case?  Perhaps the phrase refers to visa cases lingering at the National Visa Center awaiting forwarding to an embassy or other diplomatic post for an interview.  In that case, Wilkes's petition would likely be "documentarily complete."  Then again, the phrase may bear another meaning.  In what sense does the embassy use the word "most?"  Perhaps it means a bare majority of visa cases—but it could also mean all but a few.  At this stage, however, the Court reads the website in the light most favorable to Wilkes.

Thus, Wilkes's petition has awaited interview scheduling since September 2020, yet the Embassy's website indicates that most "K visa cases being scheduled [for interview] were" complete in July 2021.  *Id.*  Even granting Defendants the benefit of an assumption that a rule of

11

reason governs the time it takes Defendants to schedule visa interviews *in the normal course*, some evidence exists that the Defendants may have deviated from such a rule *in this case*; in other words, evidence exists that Wilkes's "application[] ha[s] experienced an atypical delay in adjudication." *Muvvala v. Wolf*, No. 1:20-cv-2423, 2020 WL 5748104, at *4 (D.D.C. Sep. 25, 2020). Thus, evidence exists that the State-Department Defendants may have "ignored" their supposed rule of reason "in this case by processing . . . applicants that filed their applications after plaintiff[ ]." *Gonzalez v. U.S. Dep't of Homeland Sec.*, 500 F. Supp. 3d 1115, 1129 (E.D. Cal. 2020).

Because of the statement on the Embassy's website, combined with the scant record establishing, with respect to this case, "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency," *Mashpee*, 336 F.3d at 1102, the Court cannot find at this stage that a rule of reason has governed the time the Defendants have taken to adjudicate Wilkes's petition. *Cf. Brzezinski*, 2021 WL 4191958, at *5 (The *TRAC* factors "can only be applied if the 'record contains enough facts to evaluate [them].'"); *see also Yu v. Brown*, 36 F. Supp. 2d 922, 935 (D.N.M. 1999) ("What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case.").

### 2. *TRAC* factors 3 and 5

The third and fifth factors consider whether human health and welfare are at stake, as well as the nature and extent of the interest prejudiced by the delay. Wilkes alleges that "Defendants' failure to adjudicate [his] visa application has had a profound and negative impact on the lives of Plaintiff and his fiancée." Doc. 1 at ¶ 16. Defendants begrudgingly admit this. Doc. 5 at p. 13 ("But, 'while plaintiff's welfare interests are weighty'—no one denies the desire

of loved ones to be together—'they are no more [weighty] than those of all [other] petitions awaiting [] adjudication." (quoting *V.U.C. v. U.S. Citizenship & Immigr. Servs.*, 557 F. Supp. 3d 218, 223 (D. Mass.), *appeal filed*, No. 21-1778 (1st Cir. 2021)).  Because the allegedly unreasonable delay has caused Wilkes and his fiancée to "endure a prolonged and indefinite separation. . . ," their "interests in receiving a decision are undeniably significant."  *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020).

3. ***TRAC* factor 4**

The fourth TRAC factor considers the effect of expediting agency action on the agency's other priorities.  This factor often favors the government, as the effect of compelling agency action frequently "impose[s] offsetting burdens on equally worthy" applicants by putting a plaintiff "at the head of the queue," thereby "mov[ing] all others back one space and produc[ing] no net gain."  *In re Barr Labs, Inc.*, 930 F.2d 72, 73, 75 (D.C. Cir. 1991).  However, Defendants do not even attempt to establish that a queue exists, let alone Wilkes's place in it.  *See Doe v. Risch*, 398 F. Supp. 3d 647, 658 (N.D. Cal. 2019) ("Defendants do not establish that there is a queue, however, let alone John Doe's place therein.").  Instead, they cite numerous cases noting that, if a queue exists, courts should not be in the business of sending plaintiffs to the front of the line.  Doc. 5 at pp. 12–13.  The Court concurs in that sentiment, but absent evidence that Defendants "adjudicate[ ] petitions in the order in which they are received, [Defendants] cannot show that such activity is entitled to any higher a priority than adjudicating" Wilkes's petition. *Solis v. Cissna*, No. 9:18-83, 2019 WL 8219790, at *17 (D.S.C. July 11, 2019) (citing *Potomac Elec. Power Co. v. I.C.C.*, 702 F.2d 1026, 1034 (D.D.C. 1983)); *see also Gonzalez*, 500 F. Supp. 3d at 1129–30.

As discussed above, the Embassy's website indicates consular staff are currently interviewing K-1 applicants whose applications were complete in July 2021, despite that Wilkes's petition has lingered at the National Visa Center since September 2020. Thus, Defendants' own website lends support to Wilkes's plea that he "is not asking for this case to be put ahead in line of others. Rather, [he] is asking for the Government to engage in normal processing of the case. . ." Doc. 8 at ¶ 14.

### 4. *TRAC* factor 6

The sixth *TRAC* factor calls for the consideration that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" 750 F.2d at 80. Here, Wilkes admits that he makes no allegations of bad faith. Doc. 8 at p. 18. Thus, this factor "plays no part in the Court's unreasonable delay analysis." *Muvvala*, 2020 WL 5748104, at *4; *Didban*, 435 F. Supp. 3d at 177 (finding last *TRAC* factor "inapplicable because Plaintiffs make no allegations regarding the Government's motivations").

Considering the *TRAC* factors, the Court concludes that the remaining Defendants fail to meet their burden under Rule 12(b)(6), and the Court denies their motion to dismiss. Defendants at this stage fail to establish that a rule of reason governs their decision-making or that a queue exists for visa adjudication. Further, this delay does not concern an economic regulation, but an adjudication bearing on human welfare. In light of the Court's conclusion and because "[w]hat constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case, *Yu*, 36 F. Supp. 2d at 935, the Court will greatly benefit from the development of a fulsome record as the case progresses.

### C. Wilkes's motion for summary judgment

Wilkes moves for summary judgment, combining his response to Defendants' motion to dismiss with his memorandum in support of his motion for summary judgment. Docs. 8, 9. Yet questions of material fact abound regarding the *TRAC* factors, and Wilkes has not shown himself entitled to judgement as a matter of law.

Wilkes's claims center on whether the remaining Defendants unreasonably delayed action on his pending visa petition, and, as set out in detail above, the Court determines the reasonability of the delay with reference to the *TRAC* factors. But to support his motion for summary judgment, Wilkes simply relies on his arguments against the motion to dismiss and only submits as evidence his own, two-page declaration highlighting the hardships he has endured as his petition stalled. Doc. 9-2. The undisputed facts submitted by Wilkes are perhaps material to the Court's consideration of the third and fifth *TRAC* factors, but Wilkes fails to submit any evidence related to the more important first and fourth factors, which concern agency policy and action as applied to the case. Because Wilkes's motion for summary judgment and the materials he submits in support do not allow for full consideration of each *TRAC* factor, genuine issues of material fact exist, and the Court denies without prejudice Wilkes's motion for summary judgment.

## IV. Conclusion

The Court grants in part and denies in part the Defendants' [4] motion to dismiss, and dismisses Defendants Merrick Garland, Alejandro Mayorkas, Ur Mendoza Jaddou, and Christopher Wray from the case. The claims against Defendants Antony Blinken, Richard Visek, Rena Bitter, and Heather Variava remain. The Court denies without prejudice Wilkes's [9] motion for summary judgment.

So Ordered this 29th day of April 2022.

                                                                    _____
                                                                    STEPHEN R. CLARK
                                                                    UNITED STATES DISTRICT JUDGE